UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL GARNER, et al.,

        Plaintiffs,

v.

BANK OF AMERICA CORPORATION, et al.,

        Defendants.

2:12-CV-02076-PMP-GWF

ORDER

        Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #29), filed on January 14, 2014. Plaintiffs filed an Opposition (Doc. #30) on January 28, 2014. Defendants filed a Reply (Doc. #31) on February 7, 2014.

## I. BACKGROUND

        Plaintiffs are thirty-eight Nevada residents who borrowed money from one or more of the Defendants between January 2003 and December 2008 to purchase real property in Nevada, the loans being secured by first deeds of trust on the properties. (First Am. Compl. (Doc. #25) at 7 & Appx. A.) Defendants are banks, mortgage servicing companies, trustees, and appraisal companies who provided the loans, serviced the mortgages, appraised the properties, were involved in loan modifications, and/or were involved in the foreclosure of the properties. (Id. at 8-13.)

        Plaintiffs originally brought this action in Nevada state court, asserting against Defendants various claims related to the origination, servicing, and foreclosure of their mortgages. (Pet. for Removal (Doc. #1), Ex. A.) Defendants removed the action to this Court on December 5, 2012. (Pet. for Removal.) Defendants previously filed a motion to

dismiss, which this Court granted in part and denied in part, with leave for Plaintiffs to amend. (Order (Doc. #24).) Plaintiffs filed a First Amended Complaint on October 29, 2013. Plaintiffs assert twenty-seven claims grouped into five categories: (1) intentionally placing borrowers into loans they could not afford (counts 1-5); appraisal inflation (counts 6-9); market fixing (counts 10-13); deception in loan modification (counts 14-22); and wrongful foreclosure (counts 23-27).

        Defendants now move to dismiss, arguing Plaintiffs are improperly joined in a single action, and the Court therefore should dismiss without prejudice all Plaintiffs except the first-named Plaintiffs, Michael Garner and Laura Garner. Defendants further argue that Plaintiffs' fraudulent and negligent loan origination claims in counts 1-5 should be dismissed as barred by the statute of limitations. Defendants argue Plaintiffs' individual appraisal inflation claims in counts 6-9 should be dismissed because Plaintiffs fail to allege fraud with particularity, Plaintiffs fail to allege justifiable reliance, and Plaintiffs fail to explain how Defendants controlled appraisers. Defendants also argue negligence claims cannot be based on appraisals because appraisals are non-actionable opinions. Defendants also contend count 9 is based on a federal statute and regulation which does not provide for a private right of action. As to Plaintiffs' market fixing claims in counts 10-13, Defendants argue these claims should be dismissed because Defendants had no duty to disclose anything to an arms-length borrower, Plaintiffs cannot rely on a fraud-on-the-market theory for justifiable reliance, Nevada does not recognize a negligence claim for appraisals, and Plaintiffs fail to allege sufficient facts to support an antitrust claim. As to counts 14-27, Defendants argue the Garners do not assert loan modification fraud or wrongful foreclosure, but to the extent the Court finds the other Plaintiffs are not misjoined, the seven Plaintiffs who assert these claims fail to state a claim.

        Plaintiffs respond they are properly joined in one action because their claims arise out of the same series of transactions or occurrences and Plaintiffs raise at least one

common question of law or fact.  Plaintiffs contend their loan origination claims in counts 1-5 are timely because they have alleged they did not discover their claims until 2011 or 2012 and discovery is a fact question not suitable to resolution at the dismissal stage.

As to the individual appraisal fraud-based claims in counts 6-9, Plaintiffs argue they adequately have pled fraud with particularity, both in the general allegations in the First Amended Complaint as well as particularized allegations as to each Plaintiff in the Appendix attached to the First Amended Complaint.  Plaintiffs argue that Nevada would recognize appraiser liability for intentionally erroneous appraisals and for negligent misrepresentations due to the appraiser's superior knowledge.  Plaintiffs also contend Defendants had a duty to disclose because they exceeded their role as a conventional lender.

With respect to their antitrust claim, Plaintiffs argue they adequately have alleged facts showing the appraisers colluded with the banks to inflate property values.  Plaintiffs further contend their deceptive loan modification and wrongful foreclosure claims are properly pled.  Plaintiffs concede dismissal of counts 9 and 13.

**II. DISCUSSION**

**A. Joinder**

Defendants contend Plaintiffs are not properly joined in a single action because their allegations involve different loans, obtained from different lenders, at different times, based on different representations, with different loan terms, for different properties.  Defendants also contend only some Plaintiffs have claims related to modifications or foreclosures, and each modification or foreclosure will involve different facts.  Defendants thus argue Plaintiffs' claims do not arise out of the same transaction or series of transactions, and Plaintiffs should not be joined in a single lawsuit.  Defendants request the Court sever and dismiss without prejudice all claims but those of the first-named Plaintiffs, Michael and Laura Garner.  The Court previously declined to sever in response to Defendants' first Motion to Dismiss, but Defendants note that since the Court's ruling, the

United States Court of Appeals for the Ninth Circuit ruled in a similar case that joinder was not appropriate.

Plaintiffs respond that the Complaint alleges they are common victims of Defendants' conspiracy, and thus their claims, while distinct in the particulars, arise out of the same series of transactions with Defendants. Plaintiffs also contend there are common questions of fact and law that make joinder appropriate. Plaintiffs argue the new Ninth Circuit case is distinguishable because the plaintiffs in that case purchased property throughout the United States, the allegations were vague and conclusory, and the case involved a greater number of plaintiffs and defendants than in the present action.

Pursuant to Federal Rule of Civil Procedure 20(a), plaintiffs may be joined in one action if (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Even if these requirements are met, the Court determines whether joinder is appropriate in a particular case, considering the "principles of fundamental fairness," and any potential prejudice. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000) (quotation omitted). The Court should consider Rule 20's purposes, including promoting judicial economy and reducing inconvenience, delay, and expense. Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). If joinder is not appropriate, the Court may sever and dismiss without prejudice all inappropriately joined plaintiffs except the first-named plaintiff, "so long as no substantial right will be prejudiced by the severance." Id. at 1350 (citing Fed. R. Civ. P. 21). Whether to sever lies within the Court's discretion. Id.

The Court previously declined to sever "at the present stage of the case." (Order (Doc. #24) at 7.) Since the Court's ruling, the Ninth Circuit issued Visendi v. Bank of America, N.A., 733 F.3d 863 (9th Cir. 2013). In Visendi, 160 plaintiffs sued 15 financial institutions, alleging the defendants engaged in deceptive mortgage lending practices and

4

mismanaged loan modifications, resulting in declining property values and impaired credit scores. 733 F.3d at 866. The plaintiffs owned property throughout the United States and obtained their loans from different financial institutions. Id. The defendants moved to dismiss on the grounds that the plaintiffs were misjoined. Id. The district court did not reach the issue of misjoinder, instead finding that the defendants improperly removed the action under the Class Action Fairness Act of 2005 ("CAFA"). Id. at 866-67.

On appeal, the Ninth Circuit determined the defendants properly removed the action under CAFA. Id. at 867-70. The Ninth Circuit further held that the plaintiffs were misjoined because their claims did not arise out of the same transaction, occurrence, or series of transactions or occurrences. Id. at 870. Specifically, the Visendi Court concluded that factual similarity was lacking because the case involved "over 100 distinct loan transactions with many different lenders" which were "secured by separate properties scattered across the country," and some, but not all, went into foreclosure. Id. The Visendi Court further held the plaintiffs' claims did not involve a common question of law or fact because the plaintiffs "own separate and unrelated properties across the country, they entered into separate loan transactions, and their dealings with Defendants were necessarily varied." Id. Additionally, the particular types of claims the plaintiffs asserted would "require particularized factual analysis." Id. The Ninth Circuit therefore held the claims of all but the first named plaintiff should be dismissed without prejudice to the other plaintiffs filing their own individual complaints. Id. at 871.

In light of Visendi, the Court concludes that Plaintiffs are misjoined in this action. Like the plaintiffs in Visendi, Plaintiffs bring claims based on distinct loan transactions with different lenders secured by different properties. Although all of the property in this case is located in Nevada, each property and its related transactions are distinct from each other. Additionally, like the plaintiffs in Visendi, some of the properties went into foreclosure, and some did not. Plaintiffs' interactions with Defendants varied, as

5

shown by the details of each Plaintiff's interactions with individual Defendants as set forth in Appendix A to the First Amended Complaint.

While Plaintiffs here allege in some detail an overarching conspiracy and coordinated conduct, which the Visendi plaintiffs apparently did not allege or alleged only in conclusory fashion, Plaintiffs' claims nevertheless will entail individualized inquiry, such as what representations were made to them by their respective loan officers and whether each Plaintiff justifiably relied on those alleged misrepresentations. The Court therefore will dismiss all but the first named Plaintiffs, Michael and Laura Garner, without prejudice for the remaining Plaintiffs to re-file their claims individually.

### B. Intentional Placement into Unaffordable Loans (counts 1-5)

The Garners bring five claims related to Defendants allegedly placing them into a loan they could not afford: fraudulent concealment (count 1), intentional misrepresentation (count 2), negligent misrepresentation (count 3), negligence (count 4), and deceptive trade practices under Nevada's Deceptive Trade Practices Act ("NDTPA") (count 5). Defendants move to dismiss these claims, arguing they are based on the same allegations which this Court previously ruled were untimely. The Garners respond that they have alleged they did not discover the fraud until May 6, 2011, and therefore their claims are timely. The Garners also argue that whether the statute of limitations ought to be tolled by the discovery rule is a fact-based inquiry not suitable to resolution at the dismissal stage.

Nevada's statute of limitations for fraud-based claims is three years from accrual, but a fraud claim does not accrue until the aggrieved party discovers "the facts constituting the fraud." Nev. Rev. Stat. § 11.190(3)(d). Nevada's statute of limitations for a negligence claim is two years from accrual. Id. § 11.190(4)(e). A claim under the NDTPA must be brought within four years from accrual, "but the cause of action shall be deemed to accrue when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice." Id. § 11.190(2)(d).

Generally, it is a factual question "[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action." Siragusa v. Brown, 971 P.2d 801, 806 (Nev. 1998) (quotation omitted). Thus, "the time of discovery may be decided as a matter of law only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the fraudulent conduct." Id.

The Garners entered into their loan in October 2005. (First Am. Compl., Appx. A at 1.) The original Complaint in this action was filed on November 6, 2012. Consequently, the Garners' claims in counts 1-5 are time-barred if their claims accrued at the time the Garners signed the loan documents, as Defendants contend.

The Garners allege a loan consultant steered them into an interest-only loan and a second mortgage, resulting in an overall loan-to-value ratio of eight-five percent. (Id.) The Garners also contend the loan consultant falsely advised them their payment would remain fixed throughout the life of the loan. (Id.) Further, the Garners contend the loan consultant told them they could afford their loan. (Id. at 1-2.) The Garners allege they did not discover the misrepresentations until they consulted legal counsel who conducted a review of the loan documentation and discussed the surrounding facts. (Id. at 4.) All such claims could have been discovered with reasonable diligence upon reviewing the loan documents when the Garners took out their loan in 2005. Consequently, to the extent the Garners' claims in counts 1-5 are based on misrepresentations or omissions related to the terms of the Garners' loan or whether the Garners were qualified or could afford such loans, their claims are untimely. The Court therefore will grant Defendants' Motion to Dismiss the Garners' claims in counts 1-5 with prejudice as untimely.

### C. Individual Appraisal Inflation (counts 6-9)

The Garners bring four claims related to Defendants allegedly falsely inflating the appraisal of the property the Garners purchased: intentional misrepresentation (count 6), negligent misrepresentation (count 7), negligence (count 8), and unlawful business practices

7

under the NDTPA (count 9). Defendants move to dismiss these claims, arguing the claims fail to allege with specificity which Defendant controls the appraiser and how, what the true value of the property was, or how it was inflated. Additionally, Defendants argue the First Amended Complaint fails to allege which Defendant provided the appraisal to the Garners, when, or that the Garners justifiably relied on the appraisal. Defendants also argue the negligence claims in counts 7 and 8 cannot be based on an opinion contained within an appraisal report. Defendants move to dismiss count 9, arguing it is based on a federal statute which does not provide a private right of action.

Plaintiffs contend the First Amended Complaint adequately alleges the factual relationship between Defendants and the appraisers, alleges intentional misrepresentation in the form of inflated appraisals, and justifiable reliance by inducing the Garners into moving forward with the purchase of their property. As to the negligence claims, Plaintiffs argue Nevada would allow for claims against an appraiser because the appraiser has superior knowledge or special information. Plaintiffs concede count 9 should be dismissed.

### 1. Misrepresentation Claims - counts 6-8[1]

To adequately plead either an intentional or negligent misrepresentation claim, a plaintiff must allege he justifiably relied on the alleged misrepresentation. See Nelson v. Heer, 163 P.3d 420, 426 (Nev. 2007); Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

---

[1] Although the Garners allege negligent misrepresentation and negligence in separate counts in the individual appraisal inflation section of the First Amended Complaint, both claims are based on the alleged inflated appraisal of the Garners' home, and both depend on a negligent misrepresentation. Thus, the separate negligence claim is duplicative. To the extent count 8 is also based on Defendants' alleged scheme of inflated appraisals generally and the failure to disclose such scheme, it is duplicative of count 11. To the extent count 8 is based on individual appraisal deception based on the Garners' loan terms, any such claim would be barred by the statute of limitations, as discussed above with respect to counts 1-5.

8

mistake." To satisfy this burden, the complaint must state "the who, what, when, where, and how of the misconduct charged." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted). Additionally, the complaint "must set forth what is false or misleading about a statement, and why it is false." Id. (quotation omitted).

Here, the Garners have failed to allege with particularity that they justifiably relied on the allegedly inflated appraisal. The First Amended Complaint specifically alleges that the Garners never saw the appraisal. (First Am. Compl., Appx. A at 2.) Rather, the First Amended Complaint alleges that a representative from KB Home advised the Garners that their home was worth approximately the amount set forth in the Garners' loan documentation. (Id.) Although the First Amended Complaint alleges KB Home selected "Defendants" as the Garners' mortgage lender, KB Home is not a defendant in this action and the Garners do not explain how KB Home selecting "Defendants" as the lender resulted in the Garners justifiably relying on an appraisal report they never saw. The Garners do not allege any Defendant provided them with an appraisal or represented to them what the home was worth, or that Plaintiffs justifiably relied on the appraisal or on any other representation of value made by any Defendant in deciding whether to take out a loan at all or in a certain amount. Nor do the Garners allege any such reliance was justifiable under the circumstances, such as whether the Garners justifiably relied on an appraisal to the extent it was performed by the lender's agent for the lender's benefit without any knowledge or intent that the appraisal would be shared with the Garners. The Court therefore will grant Defendants' Motion to Dismiss counts 6-8 for failure to plead fraud with particularity.

The Court will not grant the Garners leave to amend these claims. Although there is no indicia of bad faith, undue delay, or prejudice to Defendants, the Court questions whether amendment would be futile given the Garners' factual allegations in the First Amended Complaint. More importantly, the Garners previously had an opportunity to

amend following the Court's prior Order which advised the Garners of the specific pleading flaws related to these claims, but the Garners did not sufficiently allege facts correcting the identified deficiencies.  Moreover, although the Garners make a conclusory request to amend, the Garners do not explain how they would amend, nor do they attach a proposed amendment as required by Local Rule 15-1(a).  The Court therefore will dismiss counts 6-8 with prejudice.

### 2.  NDTPA - count 9

The Garners concede count 9 should be dismissed.  The Court therefore will grant Defendants' Motion to Dismiss count 9 with prejudice.

### D.  Market Fixing - counts 10-13

In counts 10-13, the Garners assert four claims against Defendants related to Defendants' alleged misconduct in manipulating the market through inflated property appraisals: fraudulent concealment (count 10), negligence (count 11), price fixing in violation of the Sherman Act (count 12), and deceptive trade practices under the NDTPA (count 13). Defendants move to dismiss counts 10 and 11, arguing that Defendants owed no special duty to disclose to the Garners based on a lender-borrower relationship. Defendants also argue there is no justifiable reliance because Plaintiffs obtained their loans for a variety of reasons unrelated to the appraisals.  Defendants move to dismiss count 12 because the First Amended Complaint alleges parallel independent conduct as opposed to an agreement to engage in market fixing activity.  Defendants also argue that the Garners simultaneously and in contradictory fashion allege Landsafe, Inc. and Defendants are distinct business entities and also affiliated entities.  Finally, Defendants argue there are no allegations regarding other lenders in Nevada, Defendants' market share, or any restraint on trade.  As to count 13, Defendants argue this count fails for the same reasons as count 9.

The Garners respond that Defendants owed a duty to disclose because they exceeded their roles as traditional lenders, and that the Garners justifiably relied on a

normally functioning market unaffected by Defendants' alleged market manipulation. As to their Sherman Act claim, the Garners argue the appraisers did not independently inflate home values for their own self-interested motives, but rather acted in collusion with Defendants who would benefit from the inflated appraisals. The Garners concede dismissal of count 13.

### 1.  Fraudulent Concealment and Negligence (counts 10 & 11)

Nevada generally does not recognize an action for fraud based on nondisclosure. See Epperson v. Roloff, 719 P.2d 799, 803-04 (Nev. 1986) (noting the "general rule" that "an action in deceit will not lie for nondisclosure"). However, a duty to disclose may arise from the parties' relationship. Dow Chem. Co. v. Mahlum, 970 P.2d 98, 110 (Nev. 1998), overruled in part on other grounds by GES, Inc. v. Corbitt, 21 P.3d 11 (Nev. 2001) ("The duty to disclose requires, at a minimum, some form of relationship between the parties."). For example, a "special relationship" between the parties may trigger the duty to disclose, even where the plaintiff has access to facts suggesting a problem exists. Mackintosh v. Jack Matthews & Co., 855 P.2d 549, 553-54 (Nev. 1993). Absent unique circumstances, lenders and loan servicers are not in a special relationship with borrowers. Wensley v. First Nat'l Bank of Nev., 874 F. Supp. 2d 957, 966-67 (D. Nev. 2012).

Additionally, where the parties are involved in a transaction and the defendant knows material facts which are not accessible to the plaintiff, the defendant has a duty of disclosure. Epperson, 719 P.2d at 804 (stating that a duty to disclose arises "where the defendant alone has knowledge of material facts which are not accessible to the plaintiff"); see also Nelson v. Heer, 163 P.3d 420, 426 (Nev. 2007) ("[T]he suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." (quotation omitted)). The duty to disclose may arise "in any situation where one party imposes confidence in the other because of that person's position, and the other party

knows of this confidence." Mackintosh, 855 P.2d at 553 (quotation omitted).

The Garners allege in the First Amended Complaint that Defendants abandoned their roles as conventional lenders, and instead originated loans without regard to underwriting standards with the goal of selling loans on the secondary market. The Garners do not explain how these allegations transform the relationship between Defendants and the Garners from that of an arms-length lender-borrower relationship into a special relationship imposing a duty to disclose. That the banks intended to sell the Garners' loan immediately after originating it does not transform the arms-length nature of their relationship. The Court therefore will grant Defendants' Motion to Dismiss counts 10 and 11 with prejudice because the Garners fail to allege a special relationship supporting a duty to disclose.

The parties do not address whether the First Amended Complaint states a claim for counts 10 and 11 based on the fact that the parties were involved in a transaction and Defendants knew material facts which were not accessible to the Garners, thus triggering a duty to disclose. The Court therefore will not address the issue.

2.  Sherman Act (count 12)

Defendants argue the First Amended Complaint fails to adequately allege agreement as opposed to independent parallel conduct in relation to the alleged collusion between Defendants and the appraisers to artificially inflate housing prices. Defendants also argue the First Amended Complaint fails to allege Landsafe, Inc. and the other Defendants are distinct business entities where the First Amended Complaint also alleges all Defendants are affiliated entities. Defendants also argue the First Amended Complaint fails to include allegations about other lenders in Nevada, Defendants' market share, or any restraint on trade. The Garners respond that they adequately have alleged coordinated conduct because it is plausible that appraisers did not inflate home values independently for their own reasons, but rather did so in collusion with Defendants who profited from the inflated real estate market.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Only unreasonable restraints on trade are prohibited. Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1197 (9th Cir. 2012). Consequently, "most antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors . . . ." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997) (quotation omitted). To state a Sherman Act § 1 claim under the rule of reason, a plaintiff must plead:

> (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition . . . [and] (4) that [the plaintiff was] harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an anti-competitive aspect of the practice under scrutiny.

Brantley, 675 F.3d at 1197 (quotations omitted). As to the first element, a plaintiff must plead sufficient factual matter to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57 (2007). Allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id.

Even assuming the First Amended Complaint adequately alleges more than parallel independent conduct, the Garners have failed to respond to Defendants' argument that the Garners failed to allege distinct business entities were involved in the alleged price fixing conspiracy. Failure to respond to Defendants' argument constitutes a consent to the Court granting the Motion. LR 7-2(d). The Court therefore will grant Defendants' Motion to Dismiss count 12 with prejudice.

### 3. NDTPA (count 13)

The Garners concede count 13 should be dismissed. The Court therefore will grant Defendants' Motion to Dismiss count 13 with prejudice.

### E. Loan Modifications and Wrongful Foreclosures (counts 14-27)

The Garners do not assert any of the claims in counts 14-27. (First Am. Compl. at 70, 103.) The Court therefore will grant Defendants' Motion to Dismiss these claims.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #29) is hereby GRANTED.

IT IS FURTHER ORDERED that the claims of all Plaintiffs except Michael and Laura Garner are hereby DISMISSED without prejudice to file their own individual actions.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants Bank of America Corporation; Bank of America, N.A.; BAC Home Loans Servicing, LP; ReconTrust Company, NA; ReconTrust Company Nevada; Countrywide Financial Corporation; Countrywide Home Loans, Inc.; Countrywide LP, Inc.; Full Spectrum Lending, Inc.; and Landsafe, Inc. and against Plaintiffs Michael Garner and Laura Garner.

DATED: May 13, 2014

_____
PHILIP M. PRO
United States District Judge